UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at LONDON)

DAMAAD GARDNER,

    Plaintiff,

v.

J. SAMS,

    Defendant.

Civil Action No. 6: 24-CV-079-CHB

**MEMORANDUM OPINION AND ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

Damaad Gardner is an inmate at the Federal Correctional Institution ("FCI") in Manchester, Kentucky. Proceeding without a lawyer, Gardner filed a civil rights complaint in which he pursues an Eighth Amendment excessive force claim against FCI Manchester Correctional Officer J. Sams pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* [R. 1]. The Court conducted an initial screening of that complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2) and allowed Gardner to proceed with his claim against Defendant Sams. *See* [R. 12].

That said, the United States Attorney's Office for the Eastern District of Kentucky entered an appearance on behalf of Sams and responded to Gardner's complaint by filing a motion to dismiss. [R. 19]. Gardner then filed a response in opposition to Sams's motion, [R. 21], and Sams filed a reply brief in support of his request for dismissal, [R. 22]. Thus, Sams's motion is now ripe for a decision from this Court.

Having fully reviewed the parties' submissions, the Court will grant Sams's dispositive motion and dismiss Gardner's complaint with prejudice because it presents a new context for a

*Bivens* action, and there are special factors advising against expanding the *Bivens* remedy to this context.

Claims seeking monetary relief against an individual federal official may be pursued (if at all) pursuant to the doctrine of *Bivens*. *Bivens* held that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents' violation of" his constitutional rights. *Bivens*, 403 U.S. at 397. However, the *Bivens* remedy is judicially created and may be applied only in limited circumstances. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). Since *Bivens* was decided in 1971, the Supreme Court has found an implied damages action to be available in the following three circumstances: (1) where federal officials searched a private residence without probable cause in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar*, 137 S. Ct. at 1854–55.

Since *Carlson* was decided over forty years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). *See also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting that "[s]ince *Carlson* we have consistently refused to extend *Bivens* to any new context or new category of defendants"). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (explaining that, since *Bivens*, *Davis*, and *Carlson*, "[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb"). The Supreme Court's directive has been clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*,

137 S. Ct. at 1857; *see also Silva v. United States*, 45 F.4th 1134, 1136 (10th Cir. 2022) ("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril.").

Under *Ziglar*, the Court must employ a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials. First, the Court must decide if the plaintiff's claim presents a "new context" or involves a "new category of defendants" for application of *Bivens*. *Hernandez*, 140 S. Ct. at 743 (citations omitted). Whether the claim is presented in a "new context" is to be interpreted broadly, as a context will be regarded "as 'new' if it is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Id*. (quoting *Ziglar*, 137 S. Ct. at 1859). A difference is "meaningful" if, for example, it involves a different constitutional right, a different category of officers as defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion. *Ziglar*, 137 S. Ct. at 1860.

If a claim arises in a new context, the Court then considers whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). This inquiry "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857–58. Under this "exacting" two-part test, the answer to the question of whether a court "should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action . . . will almost always be never." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), *reh'g denied,* No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022). "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational

reason to think that the answer is Congress—as it will be in most every case—no *Bivens* action may lie." *Egbert*, 142 S. Ct. at 1803 (2022); *see also Ziglar*, 137 S. Ct. at 1857 ("When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them.") (cleaned up).

Gardner's Eighth Amendment claim based on allegations that a prison employee used excessive force against him presents a context that is entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*. While, like the claim implied in *Carlson*, Gardner's claim sounds in the Eighth Amendment, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Plainly, a prisoner's claim that excessive force was used against him by prison staff is a different context than the claim in *Carlson* of deliberate indifference to a prisoner's serious medical needs. *See Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (determining that the plaintiff's Eighth Amendment excessive force claim arose in a new context and was therefore "presumptively non-cognizable"). Because even a "modest extension" of a prior Supreme Court case constitutes a new context, *Ziglar*, 137 S. Ct. at 1864, the Court concludes that the first part of the *Ziglar* test has been met here.

The Court, therefore, proceeds to the second step of the analysis to determine whether there are any special factors that counsel hesitation before extending the *Bivens* remedy to this new context. *Ziglar*, 137 S. Ct. at 1857. Because "separation of powers should be a guiding light . . . the [Supreme] Court has told us that we must not create a cause of action if there's 'a single sound reason' to leave that choice to Congress." *Elhady*, 18 F.4th at 883 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021)).

There are multiple reasons that a judicially-implied remedy for damages is not appropriate in this case. First, through 42 U.S.C. § 1983, Congress long ago created a statutory cause of action against state actors for violations of constitutional rights. However, it has never done so regarding federal actors. To the contrary, more recently, Congress has taken steps to curtail prisoner litigation, not expand it:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in *dicta* that the Act's exhaustion provisions would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citations omitted).

Second, there are several alternative means for prisoners to vindicate constitutional rights. For federal inmates, the Federal Bureau of Prisons' ("BOP's") inmate grievance program provides a ready and viable mechanism to challenge alleged misconduct by staff. *See Malesko*, 534 U.S. at 61 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring"). This remedy is not considered less effective merely because it is created by regulation rather than by statute. *See Egbert*, 142 S. Ct. at 1807 ("So long as Congress *or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.") (emphasis added); *Callahan*, 965 F.3d at 524 ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress." (citation omitted)). Nor is the grievance program considered a less effective remedy because it does not provide the deterrence

5

afforded by damages. *See Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Thus, courts have consistently held that the BOP's inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under *Bivens*. *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

In addition to the foregoing remedy, Gardner could have pursued a claim for monetary relief against the United States pursuant to the Federal Tort Claims Act, which is a limited waiver of the federal government's sovereign immunity permitting an action against the United States for negligent or intentional acts committed by its employees during their employment. *See* 28 U.S.C. § 1346(b)(1). Likewise, the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General may also serve to deter misconduct. *Hower v. Damron*, No. 21-5996 (6th Cir., Aug 31, 2022 Order) at p. 5. "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S.Ct. at 1858). *See also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Finally, the context of Gardner's claim is significant, since "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," all tasks that fall "peculiarly

6

within the province of the legislative and executive branches." *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,'" i*d*. (quoting *Turner*, 482 U.S. at 85), or in other words, counsel in favor "of the judiciary not creating new causes of action in this area." *Id.*

The Supreme Court has instructed that, "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (quoting *Hernandez*, 140 S. Ct. at 743). Thus, because multiple factors counsel strongly against implying a *Bivens* remedy for Gardner's Eighth Amendment claim alleging that excessive force was used against him, the Court will not do so here. This conclusion is consistent with recent Sixth Circuit case law. *See Greene*, 2022 WL 13638916, at *4 (stating that "special factors counsel against recognizing a new *Bivens* claim in this [Eighth Amendment excessive force] context, namely, that Congress has not created a cause of action for damages against federal corrections officers and officials, [the plaintiff] has an adequate alternative remedy under the BOP grievance system, and implying a cause of action in this context would risk interfering with prison administration" (citations omitted)).

In short, *Bivens* does not provide a monetary remedy for Gardner's Eighth Amendment claim based on his allegations that excessive force was used against him. Thus, Gardner's complaint, which asserts an Eighth Amendment excessive force claim against Defendant Sams, will be dismissed with prejudice.

Accordingly, it is **ORDERED** that:

1. Defendant Sams's motion to dismiss, [**R. 19**], is **GRANTED**.

2. Gardner's complaint, which asserts an Eighth Amendment excessive force claim against Defendant Sams, [**R. 1**], is **DISMISSED with prejudice**.

3. This action is **STRICKEN** from the docket.

4. The Court will enter a corresponding Judgment.

This the 20th day of December, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY